1
2
3
4
5
6
7
8            UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11   MICHAEL ALLEN,                     Case No.:  20-CV-1389 JLS (MDD)
     CDCR #H-42389,
12                                      **ORDER (1) GRANTING MOTION**
                            Plaintiff,  **TO PROCEED *IN FORMA***
13                                      ***PAUPERIS*, AND (2) SCREENING**
                vs.                     **COMPLAINT PURSUANT TO**
14                                      **28 U.S.C. §§ 1915(e)(2) AND 1915A(b)**
15
     RALPH DIAZ, Secretary;             (ECF Nos. 1, 2)
16   DR. THERESA CURRIER-DU; and
     NURSE SALAGADO,
17
                            Defendants.
18

19

20         Plaintiff Michael Allen, a California state prisoner incarcerated at Calipatria State

21   Prison in Calipatria, California, at the time of the events, filed this civil rights action

22   pursuant to 42 U.S.C. § 1983 alleging denial of his rights under the First and Eighth

23   Amendments by the discontinuation of his medication for one month in deliberate

24   indifference to his serious medical needs in retaliation for successfully seeking a writ of

25   habeas corpus.  *See generally* ECF No. 1 ("Compl.").  He has not prepaid the civil filing

26   fee, but rather has filed a Motion to Proceed *in Forma Pauperis* ("IFP") pursuant to 28

27   U.S.C. § 1915(a) ("Mot.," ECF No. 2).

28   / / /

## MOTION TO PROCEED *IN FORMA PAUPERIS*

All parties instituting any civil action, suit, or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1]  *See* 28 U.S.C. § 1914(a).  The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007).  Section 1915(a)(2) also requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005).  From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets.  *See* 28 U.S.C. §§ 1915(b)(1), (4).  The institution then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which the prisoner's account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid.  *See id.* § 1915(b)(2).  Prisoners who are granted leave to proceed IFP remain obligated to pay the entire fee in monthly installments, regardless of whether their action is ultimately dismissed. *Bruce v. Samuels*, 577 U.S. ___, 136 S. Ct. 627, 629 (2016); *see also* 28 U.S.C. §§ 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

In support of his IFP Motion, Plaintiff has submitted a copy of his California Department of Corrections and Rehabilitation ("CDCR") Inmate Statement Report and Prison Certificate attested to by a CDCR trust account official.  Mot. at 5.  The document shows he had an average monthly balance of $20.18, average monthly deposits of $22.74

---

[1]  In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50.  *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016)).  The additional $50 administrative fee does not apply to persons granted leave to proceed IFP.  *Id.*

for the six months preceding the filing of this action, and an available balance of $9.29 at the time of filing. *Id*.

The Court **GRANTS** Plaintiff's Motion to Proceed IFP; **EXACTS** an initial filing fee of $4.55, which is 20% of $22.74; and **DIRECTS** the Secretary of CDCR, or his designee, to collect and forward to the Clerk of Court the initial filing fee and, thereafter, to collect the entire $350 balance of the filing fee required by 28 U.S.C. § 1914 and forward it to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1).

### SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) AND 1915A(b)

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b). Under these statutes, the Court must *sua sponte* dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of § 1915A is to ensure that the targets of frivolous or malicious suits need not bear the expense of responding." *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (internal quote marks omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

/ / /

Section 1983 of Title 42 of the United States Code "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) the deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## I.   Plaintiff's Allegations

Plaintiff alleges he was diagnosed with Crohn's disease by a CDCR doctor in 2001 based on a colonoscopy and x-rays and that he has been a Chronic Medical Care and High-Risk Medical Inmate since that time. Compl. at 9. He alleges that treatment for his condition is medically necessary to prevent serious illness and alleviate severe pain, and that it qualifies under the Americans with Disabilities Act ("ADA") as a physical impairment which limits major life activities of eating and waste elimination. *Id.* at 9, 21, 23.

Plaintiff alleges that, while housed at Calipatria State Prison on June 11, 2019, during a scheduled visit with Defendant Dr. Currier-Du, he was told by Defendant Dr. Currier-Du that "we have no evidence of your crohns disease, you are self prescribing." *Id.* at 4. Plaintiff alleges that was a "fraudulent misrepresentation of the truth," which "was intentional as defendant reviewed plaintiff's archive medical records and had the opportunity to review plaintiff's paper files that was in Health records center and in the medical computer records." *Id.* Plaintiff alleges that, from June 11, 2019, through October 25, 2019, Defendant Dr. Currier-Du "had every opportunity to correct" that misstatement but did not do so. *Id.* He alleges that, when Defendant Dr. Currier-Du made that false statement, he asked her if it was in "retaliation for my past writ of habeas corpus against [the] medical department and Calipatria State Prison [based] on my disability on

4

crohns disease and Defendant Dr. Currier-Du at that moment wrote the fraudulent misrepresentation of truth in plaintiff's medical records that there is no evidence" he suffers from that disease and is "self prescribing." *Id*. at 4.

Plaintiff states he told Defendant Dr. Currier-Du during the June 11, 2019 appointment that his medical records from 1992 through 2019 show he is suffering from Crohn's disease and that he would file an inmate grievance "on" her. *Id*. Defendant Dr. Currier-Du at that time continued his Crohn's disease medication for 60 days, set to expire on August 11, 2019, but did not renew his medication after that, resulting in a dangerously abrupt end to mediation he had been on for years rather than a safe tapering off, in deliberate indifference to his medical needs. *Id*. at 4, 12. He states he went without medication from August 11, 2019, until October 31, 2019, when Defendant Dr. Currier-Du was replaced on Facility A, where Plaintiff was housed, by Dr. Williams, and that, on October 31, 2019, Dr. Williams renewed his medication, which stopped his stomach pain. *Id*. at 12, 14–15. He claims Defendant Dr. Currier-Du acted in retaliation for, and in an attempt to discredit, Plaintiff's writ of habeas corpus regarding the ADA and his Crohn's disease, which was granted in 2006. *Id*. at 21. He attaches as Exhibit 28 to the Complaint a February 26, 2006 order from the Imperial County Superior Court granting a writ of habeas corpus and directing he be housed in a single cell, apparently to accommodate his Crohn's disease. *Id*. at 99.

Plaintiff states that from August 11, 2019, to October 30, 2019, the period he was without medication, he requested renewal of his medication numerous times by submitting CDCR Form 7362s, but that Defendant Ralph Diaz, the Secretary of the CDCR, failed to take corrective action. *Id*. at 3. He states he wrote a letter to Defendant Secretary Diaz on June 19, 2019, regarding Defendant Dr. Currier-Du's actions but never received a response. *Id*. Plaintiff alleges Defendant Secretary Diaz maintains a custom and practice of allowing his employees to take actions described in the Complaint and seeks to hold him vicariously liable for the actions of his employees. *Id*. at 2–3, 10–11.

/ / /

Plaintiff further alleges that from September 4, 2019, through October 29, 2019, during the period he was without medication, Defendant Nurse Salagado would not schedule him to see another doctor to request continuation of his medication. *Id.* at 13. He states he was sick with stomach pains from October 15 through 20, 2019, but was not allowed to see a doctor, during which time he suffered from vomiting and an inability to eat or move his bowels for three days. *Id.* at 13, 24. He alleges Defendant Nurse Salagado "witnessed" Defendant Dr. Currier-Du place the false statement in his medical file that there was no evidence he suffered from Crohn's disease but did not report the misrepresentation within 24 hours as required by CDCR regulations. *Id.* at 13–14.

The Complaint lists twelve causes of action, including violations of the ADA (claims one and twelve); denial of medication from August 11, 2019, to October 29, 2019, in violation of Plaintiff's Eighth Amendment right to be free from deliberate indifference to his serious medical needs (claims two through six); fraud in violation of Federal Rule of Civil Procedure Rule 9 (claims seven and eight); and a violation of Plaintiff's First Amendment right to be free from retaliation for complaining about his medical treatment (claims nine through eleven). *Id.* at 26–29. Plaintiff seeks unspecified monetary damages, an injunction depriving the CDCR of funding for two months, and $300,000 in punitive damages. *Id.* at 29.

## II.    Analysis

### A.    *Eighth Amendment Claims*

"[A] prison official violates the [Cruel and Unusual Punishments Clause of the] Eighth Amendment when two requirements are met. First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Second, Plaintiff must allege the prison official he seeks to hold liable had a "'sufficiently culpable state of mind' . . . . [T]hat state of mind is one of 'deliberate indifference' to inmate health or safety." *Id.* A prison official can be held liable only if he "knows of and disregards an excessive risk to inmate health and safety;" . . . he "must both be aware of

/ / /

facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

"In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show 'deliberate indifference' to his 'serious medical needs.'" *Colwell v. Bannister,* 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)).

With respect to the allegations against Defendant Dr. Currier-Du, that she discontinued Plaintiff's medication that he had been prescribed by the CDCR and had continuously received since his diagnosis of Crohn's disease by a CDCR doctor in 2001, based on a determination that there was no evidence in his medical records that he suffered from that condition despite the allegation that she looked at those records and they contain the diagnosis, and that Plaintiff suffered pain during the month he was without medication, the Court finds Plaintiff's Complaint sufficient to survive the "low threshold" for proceeding past the *sua sponte* screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Iqbal*, 556 U.S. at 678; *Wilhelm*, 680 F.3d at 1123; *Johnson v. Mcintosh*, 90 F.3d. 330, 332 (9th Cir. 1996) (holding that deliberate indifference can be shown where "the course of treatment the doctors chose was medically unacceptable under the circumstances"). Plaintiff therefore is entitled to have the U.S. Marshal effect service of the summons and his Complaint on his behalf against Defendant Dr. Currier-Du. *See* 28 U.S.C. § 1915(d) ("The officers of the court shall issue and serve all process, and perform all duties in [IFP] cases."); Fed. R. Civ. P. 4(c)(3) ("[T]he court may order that service be made by a United States marshal or deputy marshal . . . if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. § 1915.")

With respect to Plaintiff's Eighth Amendment claim against Defendant Nurse Salagado, Plaintiff alleges that from September 4, 2019, through October 29, 2019,

Defendant Nurse Salagado would not schedule him to see a doctor other than Defendant Dr. Currier-Du to request continuation of his medication.  Compl. at 13.  He alleges Defendant Nurse Salagado "witnessed" Defendant Dr. Currier-Du place the false statement in his medical file that there was no evidence he suffered from Crohn's disease, but that she did not report this within 24 hours as required by CDCR regulations.  *Id.* at 13–14.  Although Plaintiff alleges Defendant Nurse Salagado was aware that Defendant Dr. Currier-Du discontinued his medication and entered the notation in his prison file that there was no evidence he suffered from Crohn's disease, there are no factual allegations from which a plausible inference can be drawn that Defendant Nurse Salagado knew that was an erroneous diagnosis.  Likewise, there are no factual allegations from which a plausible inference can be drawn that when Defendant Nurse Salagado refused Plaintiff's request to see a different doctor to request reinstatement of his medication, Defendant Nurse Salagado was aware that the discontinuation of the medication placed Plaintiff at a serious risk of harm and that she deliberately disregarded that risk.  *See Farmer*, 511 U.S. at 837 (holding that a prison official can be held liable only if he or she is "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [] must also draw the inference").  In other words, unlike the allegations that the treating physician Defendant Dr. Currier-Du had access to and was aware of medical records containing a diagnosis that compelled the continuation of Plaintiff's medication that Defendant Dr. Currier-Du deliberately disregarded, there are no allegations that Defendant Nurse Salagado was aware of and disregarded the same or similar information.

As to Plaintiff's Eighth Amendment claims against Defendant Secretary Diaz, Plaintiff seeks to hold Defendant Secretary Diaz liable not for any actions he took, but rather vicariously for the actions of his employees.  "Because vicarious liability is inapplicable to . . . § 1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution."  *See Iqbal*, 556 at 676; *see also Jones v. Comm. Redev. Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least me degree of

particularity overt acts which defendants engaged in" to state a claim).  "A plaintiff must allege facts, not simply conclusions, t[o] show that [each defendant] was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see also Estate of Brooks ex rel. Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999) ("Causation is, of course, a required element of a § 1983 claim."). Supervisory officials may only be held liable under § 1983 if a plaintiff alleges their "personal involvement in the constitutional deprivation, or . . . a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Keates v. Koile*, 883 F.3d 1228, 1242–43 (9th Cir. 2018); *Starr v. Baca,* 652 F.3d 1202, 1207 (9th Cir. 2011).  Plaintiff makes no such allegations against Defendant Secretary Diaz in his Complaint.  His allegation that Defendant Secretary Diaz did not respond to Plaintiff's June 19, 2019 letter informing Defendant Secretary Diaz that Defendant Dr. Currier-Du had made a fraudulent entry in Plaintiff's medical file, *see* Compl. at 3, which he mailed well before he was deprived of his medication beginning on August 11, 2019, is insufficient to state a claim, because there are no facts alleged that show a "causal connection between the supervisor's wrongful conduct and the constitutional violation." *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

Therefore, the Court *sua sponte* **DISMISSES** the Eighth Amendment claims against Defendants Nurse Salagado and Secretary Diaz based on Plaintiff's failure to state a claim against them.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121; *Watison*, 668 F.3d at 1112.

### B.   First Amendment Retaliation Claim

Plaintiff alleges Defendant Dr. Currier-Du acted in retaliation for, and in an attempt to discredit, Plaintiff's writ of habeas corpus regarding the ADA and his Crohn's disease, which was granted in 2006. Compl. at 21.  Plaintiff attaches as Exhibit 28 to his Complaint a February 26, 2006 order from the Imperial County California Superior Court granting a habeas petition and directing that Plaintiff be housed in a single cell, apparently to accommodate his Crohn's disease.  *Id*. at 99.  Plaintiff alleges that when Defendant

Dr. Currier-Du made the false statement that his CDCR medical records contain no evidence he has Crohn's disease, he asked her if it was in "retaliation for my past writ of habeas corpus against [the] medical department and Calipatria State Prison [based] on my disability on crohns disease and Dr. Currier-Du at that moment wrote the fraudulent misrepresentation of truth in plaintiff's medical records that there is no evidence" he suffers from that disease and is "self prescribing." *Id*. at 4.

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." *Watison*, 668 F.3d at 1114. The Ninth Circuit has stated:

> Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Rhodes*, 408 F.3d at 567–68. The adverse action need not be an independent constitutional violation. *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009) ("[T]he mere threat of harm can be an adverse action."); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995); *see also Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) ("[A] retaliation claim may assert an injury no more tangible than a chilling effect on First Amendment rights."). The plaintiff must allege a retaliatory motive; that is, a causal connection between the adverse action and his protected conduct. *Watison*, 668 F.3d at 1114.

Plaintiff alleges Defendant Dr. Currier-Du made a verbal statement that Plaintiff's medical records did not contain evidence he has Crohn's disease and Plaintiff had diagnosed himself, that Plaintiff then asked her whether that statement was made in retaliation for his habeas petition, and that Defendant Dr. Currier-Du then wrote a notation in his file containing that statement. Thus, Plaintiff alleges that Defendant Dr. Currier-Du already had made the determination that his medical records did not contain evidence he suffered from Crohn's disease before Plaintiff mentioned his habeas petition and that her

alleged retaliatory act was to record that statement in his medical records.  The Complaint alleges, however, that Defendant Dr. Currier-Du's determination that the CDCR medical records did not support a finding Plaintiff suffers from Crohn's disease was obviously wrong and fraudulent and was allegedly immediately discovered as such when Defendant Dr. Currier-Du was replaced by Dr. Williams because the records clearly contain that information.

Consequently, it was Dr. Currier-Du's determination that Plaintiff's records did not show he suffered from Crohn's disease that constitutes the adverse action, and that statement was made prior to Plaintiff informing her of his protected activity.  The Complaint therefore does not plausibly allege that Defendant Dr. Currier-Du deprived Plaintiff of his medication in retaliation for his protected activity.  *See Pratt*, 65 F.3d at 807–08 (concluding that, in the absence of factual allegations to the contrary, it would be "sheer speculation" to assume that prison officials retaliated on the basis of an inmate's First Amendment activity); *id*. at 808 ("Timing alone . . . is generally not enough to support an inference that prison officials took an adverse action against a prisoner in retaliation for the prisoner's participation in protected conduct.")  If Plaintiff wishes to bring a First Amendment retaliation claim against Defendant Dr. Currier-Du, or any other Defendant, he must allege facts from which a plausible inference can be drawn that his medication was discontinued, or some other adverse action was taken against him, in retaliation for his protected activity.

Accordingly, the Court *sua sponte* **DISMISSES** the First Amendment claim against Defendant Dr. Currier-Du based on Plaintiff's failure to state a claim.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121; *Watison*, 668 F.3d at 1112.

### C.    ADA Claims

Plaintiff seeks to hold Defendants liable for his claims that he brings pursuant to the ADA.  The ADA applies in the prison context.  *See* 42 U.S.C. § 12131(1)(B); *United States v. Georgia*, 546 U.S. 151, 154 (2006).  To state a claim under Title II of the ADA, however, a plaintiff must allege:

(1) he "is an individual with a disability;" (2) he "is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;" (3) he "was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;" and (4) "such exclusion, denial of benefits, or discrimination was by reason of [his] disability."

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (quoting *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002) (per curiam))).

Plaintiff may not pursue an ADA claim against the individual Defendants in their individual capacities. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (holding that the "bar on suits against individual defendants" applies to the ADA); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (holding that the "ADA applies only to public entities"). The CDCR can be liable under the ADA "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Because Plaintiff names only individuals as Defendants, however, his Complaint fails to state an ADA claim upon which relief can be granted. *Id.*; *see also Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) ("[A] plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA.").

In any case, Plaintiff's allegations of discontinuation of his medication, although cognizable under the Eighth Amendment, are unlikely to state an ADA claim simply by being recast as an ADA claim. *See, e.g.*, *Buchanan v. Maine*, 469 F.3d 158, 174 (1st Cir. 2006) (noting that the ADA does not set forth a standard of care for medical treatment) (citing *Olmstead v. Zimring*, 527 U.S. 581, 603 n.14 (1999) ("We do not hold in this opinion that the ADA imposes on the States a 'standard of care' for whatever medical services they render . . .")). Plaintiff has also failed to allege facts from which a plausible

12

inference could be drawn that Defendants' actions were taken "by reason of his disability." *O'Guinn*, 502 F.3d at 1060.

Therefore, the Court *sua sponte* **DISMISSES** the ADA claims based on Plaintiff's failure to state a claim.  *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Wilhelm*, 680 F.3d at 1121; *Watison*, 668 F.3d at 1112.

### D.    Leave to Amend

In light of Plaintiff's pro se status, the Court **GRANTS** him leave to amend his pleading to attempt sufficiently to allege a § 1983 claim.  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

Because the Court has determined that only Plaintiff's Eighth Amendment claim against Defendant Dr. Currier-Du survives the *sua sponte* screening process, it will give Plaintiff the opportunity either to (1) notify the Court of his intent to proceed with only that claim against only that Defendant, or (2) file an Amended Complaint that corrects the deficiencies of pleading against any or all Defendants identified in this Order.  Plaintiff **MUST CHOOSE** one of these options *within forty-five (45) days from the date on which this Order is dated*.  If Plaintiff notifies the Court he wishes to proceed with only his Eighth Amendment claim, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint on Defendant Dr. Currier-Du and dismiss all other claims.[2]

/ / /

/ / /

---

[2] The Complaint also alleges that Defendant Dr. Currier-Du "violated Federal Rule of Civil Procedure 9(b) fraud" in making the allegedly fraudulent entry in his medical records.  Compl. at 27.  Rule 9 provides for a heightened pleading standard for allegations that sound in fraud, including misrepresentations, but does not provide a cause of action.  *See Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d 1097, 1106–07 (9th Cir. 2003).  If Plaintiff intends to bring a fraud claim, he may attempt to do so in his amended complaint.

**CONCLUSION**

For all the reasons discussed, the Court:

1.      **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2);

2.      **ORDERS** the Secretary of the CDCR, or his designee, to **COLLECT** from Plaintiff's prison trust account the $4.55 initial filing fee as well as the balance of the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and **FORWARD** payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2), with ALL PAYMENTS CLEARLY IDENTIFYING THE NAME AND CASE NUMBER ASSIGNED TO THIS ACTION;

3.      **DIRECTS** the Clerk of the Court to serve a copy of this Order on Ralph Diaz, Secretary, CDCR, P.O. Box 942883, Sacramento, California, 94283-0001;

4.      **GRANTS** Plaintiff <u>forty-five (45) days' leave from the date of this Order</u> in which either to (1) notify the Court of his intention to proceed only with his Eighth Amendment claim against Defendant Dr. Currier-Du, or (2) file a First Amended Complaint that cures the deficiencies of pleading noted in this Order.  Plaintiff's First Amended Complaint must be clearly entitled "First Amended Complaint," include Civil Case No. 20-CV-1389 JLS (MDD) in its caption, and be complete by itself without reference to his original Complaint.  *Any defendants not named and any claims not re-alleged in the First Amended Complaint will be considered waived.  See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *see also Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled"); and

/ / /

/ / /

/ / /

14

20-CV-1389 JLS (MDD)

5.      **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for his use in amending, should he choose to do so.

**IT IS SO ORDERED**.

Dated:  November 6, 2020

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge

20-CV-1389 JLS (MDD)