# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALLEN, CDCR #H-42389, <br><br> Plaintiff, <br><br> v. <br><br> DR. THERESA CURRIER-DU and NURSE SALAGADO, <br><br> Defendants. | Case No.: 20-CV-1389 JLS (MDD) <br><br> **ORDER: (1) DISMISSING ADA CLAIMS AGAINST DEFENDANTS FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b); (2) DIRECTING U.S. MARSHAL SERVICE TO EFFECT SERVICE OF SECOND AMENDED COMPLAINT ON DEFENDANT CURRIER-DU AS TO REMANING CLAIMS; AND (3) GRANTING MOTION FOR EXTENSION OF TIME TO SERVE SECOND AMENDED COMPLAINT AND DENYING AS MOOT MOTION TO EXPEDITE RULING ON SAME** <br><br> (ECF Nos. 35, 37, 39, 40) |

Presently before the Court are Plaintiff Michael Allen's ("Allen" or "Plaintiff") Second Amended Complaint ("SAC," ECF No. 35), Motion for Extension of Time to Serve the SAC (ECF No. 37), Motion for Order Directing Service of the SAC (ECF No. 39), and Motion to Expedite Ruling on Motion for Extension of Time (ECF No. 40).

On July 20, 2020, Allen, a California state prisoner incarcerated at Calipatria State Prison ("CSP") at the time of the relevant events, filed a civil rights action pursuant to 42 U.S.C. § 1983. *See* ECF No. 1. On November 6, 2020, the Court granted Allen's Motion to Proceed *in Forma Pauperis* ("IFP") and screened his complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(b). *See generally* ECF No. 4. The Court found that Allen had failed to state a claim as to named Defendants Secretary Diaz and Nurse Salagado. *Id.* at 9. As to Defendant Dr. Theresa Currier-Du, the Court concluded Plaintiff failed to state a First Amendment retaliation claim or an Americans with Disabilities Act ("ADA") claim but did state an Eighth Amendment claim. *Id.* at 7, 9–10, 13. The Court granted Allen leave file a First Amended Complaint curing the identified pleading deficiencies or to file notice of his intent to proceed with respect to his Eighth Amendment claim against Dr. Currier-Du only. *See id.* at 13–14.

On November 4, 2020, however, and just two days before the Court issued its screening Order, Allen filed an "Amended Complaint" (ECF No. 12) along with a Motion to File Excess Pages (ECF No. 6), a Motion for Appointment of Counsel (ECF No. 8), and a Motion to Expedite Screening (ECF No. 10). Because the Amended Complaint and accompanying motions were received by the Court via the United States Postal Service, Allen's filings were not entered into the Court's docket until November 10, 2020. *See* ECF No. 12. In the meantime, this Court's November 6, 2020 Order granting Plaintiff's IFP Motion and screening the original Complaint issued. *See* ECF No. 4. On November 19, 2020, after Plaintiff received the Court's Screening Order, he filed a Motion for Reconsideration and a Request for Judicial Notice. ECF Nos. 14, 16. Allen then filed two separate Requests for Summons on March 5, 2021 and March 17, 2021. *See* ECF Nos. 18, 20.

In a June 2, 2021 Order, the Court denied Plaintiff's Motions for Reconsideration, for Appointment of Counsel, and to Expedite Ruling; denied Plaintiff's Request for Judicial Notice; granted Plaintiff's Motion to File Excess Pages; dismissed Defendants Diaz and Salagado following screening of the Amended Complaint pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915(b); and granted Plaintiff's Requests to Serve Summons as to Dr. Currier-Du, the sole remaining defendant. *See generally* ECF No. 21.

Allen filed a Notice of Appeal with the United States Court of Appeals for the Ninth Circuit on June 14, 2021. ECF No. 25. The appeal was dismissed for lack of jurisdiction and the mandate issued on August 9, 2021. *See* ECF Nos. 31, 36. In the meantime, Allen filed a Motion for Leave to File a Second Amended Complaint on June 28, 2021. ECF No. 29. The Court granted the motion on July 19, 2021. ECF No. 32. Allen filed his Second Amended Complaint ("SAC") on August 4, 2021. ECF No. 35. He filed a Motion for Extension of Time to Serve the SAC on September 7, 2021 [1] (ECF No. 37), and a Motion to Direct Marshal Service of the SAC on December 3, 2021 (ECF No. 39).

**SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

As Allen now knows, the Prison Litigation Reform Act ("PLRA") requires the Court to review complaints filed by all persons proceeding IFP and by those, like him, who are "incarcerated or detained in any facility [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as practicable after docketing." *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b).

I.  **Legal Standards**

   A.  ***Standard of Review***

Under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), the Court *sua sponte* must dismiss a prisoner's IFP complaint, or any portion of it, that is frivolous, malicious, fails to state a claim, or seeks damages from immune defendants. *See Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v.*

---

[1] Plaintiff also filed a "Motion for a 60 Day Extension of Time to Serve Summons and Complaint Pursuant to F.R.C.P. Rule 4" on July 21, 2021, seeking additional time to "serve summons and complaint on Defendant Dr. Theresa L. Currier-Du." ECF No. 33 at 1. Because of Allen's stated intent to file a second amended complaint, the Court denied the request. *See* ECF No. 34 at 3 (citing *Lacey v. Maricopa County*, 693 F.3d 896, 927 (9th Cir. 2012) (holding prior complaints have no legal effect after being superseded by amended complaint)).

1  *Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)).  "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'"  *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)").  Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.  The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

Finally, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to his SAC.  *See* Fed. R. Civ. R. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) ("[M]aterial which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss.)).

### B. 42 U.S.C. § 1983

"Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Devereaux v. Abbey*, 263 F.3d 1070, 1074 (9th Cir. 2001). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (internal quotation marks and citations omitted). "To establish § 1983 liability, a plaintiff must show both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

## II. Plaintiff's Allegations

In his SAC, Allen alleges he was diagnosed with Crohn's disease by a California Department of Corrections and Rehabilitation ("CDCR") doctor in 2001 based on a colonoscopy and x-rays. SAC at 11. As a result of his diagnosis, Plaintiff has been classified as a "Chronic Medical Care Inmate" and "High-Risk Medical Inmate" since 2012 and 2018, respectively. *Id*. Allen requires medication to "induce and maintain remission" from Crohn's disease. *Id.* at 12. Plaintiff alleges he qualifies to bring a claim under the ADA because his condition creates a physical impairment that limits major life activities, such as eating and "waste elimination." *Id*. at 21.

On June 11, 2019, while housed at CSP, Plaintiff had a scheduled appointment with Dr. Currier-Du. During the examination, Dr. Currier-Du stated, "We have no evidence of your Crohn's disease, you are self-prescribing." *Id*. at 3. Plaintiff alleges that Dr. Currier-Du had reviewed his medical records and computer files and therefore had no basis for "fraudulently misrepresent[ing] the truth" by denying that he had Crohn's disease. *Id*. Allen told Dr. Currier-Du that his medical records from 1992 to 2019 show he suffers from Crohn's disease and that he would file an inmate grievance against her for dismissing his diagnosis and threatening to discontinue his medication. *Id*. at 3, 9. During the

///

appointment, Dr. Currier-Du continued Plaintiff's Crohn's disease medication for 60 additional days, to expire on August 11, 20219. *Id.* at 9.

On July 17, 2019, just a few days after his appointment with Dr. Currier-Du, Allen filed an administrative grievance against Dr. Currier-Du. *Id.* at 10; *id.* Ex. 13 at 52. On August 11, 2019, Dr. Currier-Du failed to renew Allen's Crohn's medication. *Id.* at 9. Plaintiff alleges Dr. Currier-Du also failed to properly taper him off the medication, which "could have resulted in significant injury of flare ups of Crohn's disease, [including] . . . uncontrollable bowel movements, stomach pain, vomiting and diarrhea." *Id*. at 4, 12. He states that, because Dr. Currier-Du failed to renew his medication, he went without it from August 11, 2019 until October 31, 2019. *Id.* at 4–15. During that time, Allen sought renewal of his medication numerous times,[2] but his requests for medication and to see a doctor went unheeded. *Id.* at 10, *see also id.* Ex. 15 at 55. Allen states that, as a result of Dr. Currier-Du discontinuing his medication, he got "sick with stomach pains" on October 15, 2019. *Id.* at 10. On October 30, 2019, after Dr. Currier-Du was no longer assigned to Facility A where Plaintiff was housed, Plaintiff "was allowed to see another doctor (Dr. Williams) and [the] medication to treat [his] Crohn's disease was renewed." *Id.* at 11.

Plaintiff raises three claims in his SAC. He contends Dr. Currier-Du violated his Eighth Amendment rights when she was deliberately indifferent to his serious medical needs. *Id.* at 3, 9–16. He also alleges Dr. Currier-Du violated his First Amendment rights by retaliating against him for complaining about his medical treatment. *Id*. at 4, 16–19. Finally, he alleges Dr. Currier-Du and Defendant Nurse Salagado violated his rights under the ADA. *Id*. at 5, 19–21. Plaintiff seeks $200,000 in compensatory damages, $300,000 in punitive damages, and an injunction and declaratory relief "to participate in disability" programs without retaliation. *Id*. at 7, 26.

---

[2] Plaintiff alleges he submitted CDCR 7362 Health Care Services Request forms on August 8, 2019, August 20, 2019, and October 15, 2019. *See* ECF No. 10.

## III. Analysis

### A. *Eight Amendment Deliberate Indifference Claim*

In his first claim, Plaintiff alleges Dr. Currier-Du violated his Eight Amendment right to adequate medical care. SAC at 3, 8–15. The Eighth Amendment prohibits cruel and unusual punishment of a person convicted of a crime. U.S. Const. amend. VIII. "After incarceration, only the unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (ellipsis in original) (internal quotation and citation omitted).

To state a claim under the Eighth Amendment, Plaintiff must plead facts to plausibly suggest that Dr. Currier-Du: (1) exposed him to a substantial risk of serious harm; and (2) did so with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994); *Iqbal*, 556 U.S. at 678. Specifically, in a medical care case such as this, Plaintiff must first allege he suffered from or faced an objectively "serious medical need." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006); *Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1248 (9th Cir. 2016). "A medical need is serious when the failure to treat it could result in significant injury or the unnecessary and wanton infliction of pain." *Jett*, 439 F.3d at 1096; *see also McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997). In addition, Plaintiff must allege facts sufficient to demonstrate Dr. Currier-Du acted with "deliberate indifference" to his serious medical needs. *See Erickson v. Pardus*, 551 U.S. 89, 90 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment," and this includes "indifference . . . manifested by prison doctors in their response to the prisoner's needs.")).

Here, Allen alleges Dr. Currier-Du dismissed his Crohn's disease diagnosis and discontinued his Crohn's medication despite her review of his CDCR medical records, which document his lengthy history with the disease and his ongoing treatment by CDCR medical professionals since 2001. Allen alleges that, as a result of being denied his Crohn's

medication, he got ill with stomach pain, a symptom of the disease. SAC at 9–10. Based on the allegations contained in the SAC, the Court finds Plaintiff's claim sufficient to survive the "low threshold" for proceeding past the *sua sponte* screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Johnson v. Mcintosh*, 90 F.3d. 330, 332 (9th Cir. 1996) (holding that deliberate indifference can be shown where "the course of treatment the doctors chose was medically unacceptable under the circumstances").

### B. First Amendment Retaliation Claim

In his second claim, Plaintiff alleges Dr. Currier-Du violated his First Amendment rights by retaliating against him after he complained about the medical care she was providing. SAC at 4, 17–19. To state a First Amendment retaliation claim, Plaintiff must assert: (1) a state actor took some adverse action against him, (2) the adverse action was taken because he engaged in some protected conduct, (3) the state actor's acts "would chill or silence a person of ordinary firmness from future First Amendment activities," and (4) the adverse action "did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Allen alleges that he was diagnosed with Crohn's disease in 2001. He further states that he had been treated for the condition for many years while incarcerated. Indeed, he was designated a "Chronic Medical Care Inmate" and "High-Risk Medical Inmate" since 2012 and 2018, respectively, due to the condition. SAC at 11. Plaintiff alleges Dr. Currier-Du knew of this lengthy history with Crohn's disease based on Plaintiff's medical records and, despite this, dismissed Allen's diagnosis during his June 11, 2019 appointment, telling him, "[w]e have no evidence of your Crohn's disease, you are self-prescribing." *Id*. at 3, 16. Allen filed a grievance against Dr. Currier-Du on June 17, 2019. *Id*. Ex. 13 at 52. Allen alleges that, on August 11, 2019, Dr. Currier-Du discontinued his Crohn's medication and intentionally failed to properly taper him off the medication in retaliation for Allen filing the administrative grievance against her. *Id*. at 16–17. Plaintiff states he was unable to get his prescription refilled despite submitting several requests to Dr.

Currier-Du and other medical staff. It was only after Dr. Currier-Du no longer worked in "A Facility," where Allen was housed, that he was put back on his medication by another doctor on October 30, 2019. *Id.* at 11.

The filing of grievances and the pursuit of civil rights litigation against prison officials are both protected activities. *Rhodes*, 408 F.3d at 567–68. A causal connection between the adverse action and the protected conduct can be alleged by an allegation of a chronology of events from which retaliation can be inferred. *Watison*, 668 F.3d at 1114. Here, Allen alleges that on July 17, 2019, days after his appointment with Dr. Currier-Du, he filed a grievance complaining that Dr. Currier-Du had been dismissive of his Crohn's disease diagnosis, despite his long medical history of being treated for the condition. Allen alleges that, after submitting the grievance, Dr. Currier-Du discontinued his Crohn's medication, failed to properly taper him off the mediation, and refused to refill it.

While Allen was able to file requests to be seen by a doctor, he still may allege his speech was chilled. "At the pleading stage, [the Ninth Circuit has] never required a litigant, *per impossibile*, to demonstrate a total chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in order to perfect a retaliation claim. Speech can be chilled even when not completely silenced." *Rhodes*, 408 F.3d at 568. Rather, "the proper First Amendment inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" *Id*. (quoting *Mendocino Envt'l Ctr. v. Mendocino Cty.*, 192 F.3d 1283, 1300 (9th Cir. 1999)). "Because 'it would be unjust to allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity,' [a plaintiff] does not have to demonstrate that his speech was 'actually inhibited or suppressed.'" *Id*. at 569 (quoting *Mendocino Envt'l Ctr.*, 192 F.3d at 1300). Instead, a plaintiff need only allege "that his First Amendment rights were chilled, though not necessarily silenced." *Id*.

Based on the allegations contained in the SAC, the Court finds Plaintiff's claim sufficient to survive the "low threshold" for proceeding past the *sua sponte* screening

20-CV-1389 JLS (MDD)

required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm*, 680 F.3d at 1123; *Iqbal*, 556 U.S. at 678; *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) ("The right of meaningful access to the courts extends to established prison grievance procedures."), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).

### C. ADA Claim

Plaintiff also seeks to hold Dr. Currier-Du and Nurse Salagado liable under the ADA. The ADA applies in the prison context. *See* 42 U.S.C. § 12131(1)(B); *United States v. Georgia*, 546 U.S. 151, 154 (2006). In order to state a claim under Title II of the ADA, however, a plaintiff must allege:

> (1) he 'is an individual with a disability;' (2) he 'is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities;' (3) he 'was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity;' and (4) 'such exclusion, denial of benefits, or discrimination was by reason of [his] disability.'

*O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir. 2007) (citing *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004)).

In addition, Plaintiff may not pursue an ADA claim against Defendants in their individual capacities. *See Walsh v. Nev. Dep't of Human Res.*, 471 F.3d 1033, 1038 (9th Cir. 2006) (holding that the "bar on suits against individual defendants" applies to the ADA); *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002) (holding that the "ADA applies only to public entities"). The CDCR can be liable under the ADA "if it intentionally or with deliberate indifference fails to provide meaningful access or reasonable accommodation to disabled persons." *Mark H. v. Lemahieu*, 513 F.3d 922, 938 (9th Cir. 2008). Thus, to the extent Plaintiff names Defendants Dr. Currier-Du and Nurse Salagado in their individual capacities, his SAC fails to state an ADA claim upon which relief can be granted. *Id.*; *see also Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002) ("[A] plaintiff
///

cannot bring an action under 42 U.S.C. § 1983 against a State official in [his or] her individual capacity to vindicate rights created by Title II of the ADA.")

To the extent Plaintiff alleges Dr. Currier-Du and Nurse Salagado violated his rights under the ADA while acting in their official capacities, his SAC still fails to state a claim. A plaintiff in a section 1983 action who is pursuing a defendant in his or her official capacity must show that a policy or custom of the governmental agency "played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law."). This requirement applies to official capacity suits under the ADA. *See Hayes v. Voong*, 709 F. App'x 494, 495 (9th Cir. 2018) (affirming dismissal of prisoner's ADA claims against defendants in their official capacities because prisoner's complaint failed to identify a policy or custom of the state that allegedly violated federal law). As discussed above, to state a potentially colorable ADA claim, plaintiff must demonstrate that a policy or custom of the governmental agency played a part in the violation of federal law. Plaintiff's SAC makes no such showing.

Plaintiff has also failed to allege facts from which a plausible inference could be drawn that Defendants' actions were taken "by reason of his disability." *See O'Guinn*, 502 F.3d at 1060. He simply alleges that because he is disabled and he was not able to get a medical appointment, it was due to his disability. These conclusory allegations, however, are insufficient to state a claim. *Iqbal*, 556 U.S. at 678. Moreover, Allen's allegation that he submitted requests to see a doctor that went unanswered does not demonstrate that he was "excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity." *See O'Guinn*, 502 F.3d at 1060; *McGary*, 386 F.3d at 1265. Plaintiff simply alleges that Defendants failed to schedule him for a medical appointment despite his requests. The Ninth Circuit has held "the "ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navajo Cty., Ariz.*, 609 F.3d 1011, 1022

(9th Cir. 2010), *overruled on other grounds by Castro v. City of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *see also Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("[T]he Act would not be violated by a prison's simply failing to attend to the medical needs of its disabled prisoners . . . . The ADA does not create a remedy for medical malpractice."). Thus, Allen has failed to state a claim that either Dr. Currier-Du or Nurse Salagado violated the ADA while acting in their official capacities.

Therefore, The Court dismisses the ADA claims *sua sponte* based on Plaintiff's failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii) & 1915A(b)(1); *Watison*, 668 F.3d at 1112; *Wilhelm*, 680 F.3d at 1121. Because it is clear that Plaintiff cannot cure the pleading defects, Allen's ADA claims against Dr. Currier-Du and Nurse Salagado are dismissed without leave to amend.

**MOTIONS FOR SERVICE, FOR EXTENSION OF TIME, AND TO EXPEDITE**

On September 7, 2021, Allen filed a Motion for Extension of Time to Serve Summons and Second Amended Complaint. ECF No. 37. And, on December 15, 2021, he filed a Motion for Order Directing Marshal Service of the SAC. ECF No. 39. Finally, on January 24, 2022, Allen filed a Motion to Expedite Ruling on Motion for Extension of Time (ECF No. 40).

A party proceeding IFP is entitled to have the summons and complaint served by the United States Marshal Service ("USMS"). *Puett v. Blandford*, 912 F.2d 270, 273 (9th Cir. 1990). Rule 4(m) of the Federal Rules of Civil Procedure requires a plaintiff to serve a defendant with process within ninety days of filing a complaint. Fed. R. Civ. P. 4(m). If a plaintiff fails to comply, the court, after notice to the plaintiff, and upon motion or on its own initiative, may dismiss the action without prejudice. *Id.* However, if the plaintiff shows good cause for a failure to effectuate service, the court may extend the time of service. *See Muhammed v. Dep't of Treasury*, No. 97-cv-8137 LGB CWX, 1998 WL 986245, at *4 (C.D. Cal. Nov. 17, 1998); *see also* Fed. R. Civ. P. 4(m).

A review of the Court's docket indicates that on June 2, 2021, a summons issued for Dr. Currier-Du after service of the First Amended Complaint was ordered, *see* ECF No.

22, but the summons was returned unexecuted by the USMS on July 7, 2021, because Dr. Currier-Du was no longer employed by the CDCR, *see* ECF No. 30.  For the reasons discussed above, and as outlined below, the Court grants Allen's motion requesting USMS service of the SAC on Dr. Currier-Du.  Furthermore, in light of Plaintiff's pro se status and good cause appearing, the Court grants Plaintiff's request for extension of time and provides an additional 90 days from the date of this Order to effect service of the SAC upon Dr. Currier-Du.  *See Efaw v. Williams*, 473 F.3d 1038, 1040 (9th Cir. 2007).  As such, the Court denies as moot Allen's Motion to Expedite Ruling on Motion for Extension of Time to Serve Summons (ECF No. 40), filed on January 24, 2022.

## CONCLUSION

For the foregoing reasons, the Court:

(1)     **DISMISSES** Plaintiff's ADA claims against Defendants Dr. Currier-Du and Nurse Salagado **WITHOUT LEAVE TO AMEND** for failing to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b);

(2)     **DIRECTS** the Clerk of the Court to issue a summons as to Plaintiff's Second Amended Complaint (ECF No. 35) upon Defendant Dr. Theresa Currier-Du and forward it to Allen along with a blank U.S. Marshal Form 285 (the "USM Form").  In addition, the Clerk of the Court shall provide Allen with a certified copy of this Order, a certified copy of his Second Amended Complaint, and the summons so that he may serve Dr. Theresa Currier-Du.  Upon receipt of this "IFP Package," Allen must complete the USM Form as completely and accurately as possible, include an address where Dr. Currier-Du may be found and/or subject to service pursuant to S.D. Cal. CivLR 4.1.c, and return it to the USMS according to the instructions the Clerk provides;

(3)     **GRANTS** Allen's Motion for Extension of Time to Serve Second Amended Complaint (ECF No. 37) and **DENIES AS MOOT** his Motion to Expedite Ruling on the same (ECF No. 40);

(4)     **ORDERS** the USMS to serve a copy of the Second Amended Complaint and summons upon Defendant Dr. Theresa Currier-Du upon receipt and as directed by Allen

on the completed USM Form and to promptly file proof of service, or proof of any attempt at service unable to be executed, with the Clerk of the Court. *See* S.D. Cal. CivLR 5.2. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); Fed. R. Civ. P. 4(c)(3);

(5) **ORDERS** Defendant Dr. Currier-Du, once served, to reply to Plaintiff's Second Amended Complaint within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its *sua sponte* screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and thus has made a preliminary determination based on the face on the pleading alone that the plaintiff has a "reasonable opportunity to prevail on the merits," the defendant is required to respond); and

(6) **ORDERS** Allen, after service has been effected by the USMS, to serve upon Defendant Dr. Currier-Du, or, if appearance has been entered by counsel, upon Dr. Currier-Du's counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to Federal Rule of Civil Procedure 5(b). Allen must include with every original document he seeks to file with the Clerk of the Court a certificate stating the manner in which a true and correct copy of that document was served on Defendant Dr. Currier-Du or her counsel and the date of that service. *See* S.D. Cal. CivLR 5.2. Any document received by the Court that has not been properly filed with the Clerk of the Court or fails to include a certificate of service upon Dr. Currier-Du or her counsel may be disregarded.

**IT IS SO ORDERED.**

Dated: January 27, 2022

Hon. Janis L. Sammartino
United States District Judge