UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL ALLEN,<br><br>                          Plaintiff,<br><br>v.<br><br>DIAZ, et al.,<br><br>                          Defendants. | Case No.:  20-CV-1389 JLS (LR)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS THIRD AMENDED COMPLAINT AND DISMISSING WITH PREJUDICE PLAINTIFF'S THIRD AMENDED COMPLAINT**<br><br>(ECF Nos. 66, 69) |

Presently before the Court is Defendant Theresa Currier's ("Defendant" or "Dr. Currier") Motion to Dismiss Third Amended Complaint ("Mot.," ECF No. 69).  Plaintiff Michael Allen filed an Opposition to the Motion ("Opp'n," ECF No. 86), and Defendant filed a Reply in support of the Motion ("Reply," ECF No. 93).  Having considered Plaintiff's Third Amended Complaint ("TAC," ECF No. 66), the Parties' arguments, and the law, the Court **GRANTS** Defendant's Motion to Dismiss and **DISMISSES WITH PREJUDICE** Plaintiff's TAC.

/ / /

/ / /

/ / /

# FACTUAL BACKGROUND[1]

Plaintiff is a California state prisoner who formerly was housed at Calipatria State Prison ("Calipatria").  *See* TAC at 1.  On June 11, 2019, Plaintiff attended a scheduled medical appointment with Defendant, who was then a doctor at Calipatria.  *Id.* at 3.  During the examination, Defendant allegedly informed Plaintiff that his medical records contained no evidence that he suffered from Crohn's disease.  *Id.*  Plaintiff protested, claiming his diagnosis had been documented in his medical record since at least 2001.  *Id.* at 3, 11.[2]  The TAC provides differing accounts of the alleged dispute that followed.  Plaintiff generally maintains, however, that he questioned whether Defendant was feigning ignorance of his diagnosis with Crohn's disease in response to previous litigation that he initiated against Calipatria in 2006, and that he stated his intent to file a grievance against Defendant for denying his medication.  *See id.* at 3–4.  Defendant allegedly "became angry" during this interaction and accused Plaintiff of self-prescribing medication for Crohn's disease.  *Id.*

Attached as an exhibit to the TAC is a page of Defendant's progress notes from the June 11, 2019 appointment.  *See* ECF No. 66-2 at 2.[3]  "Per patient he has Crohn's disease. We have no evidence of this," Defendant noted.  *Id.*  Defendant reported that Plaintiff was prescribed 400 milligrams of mesalamine twice daily, and that he threatened to file a grievance against anyone who "takes this prescription away from him."  *Id.*  "Basically he is self prescribing," Defendant opined.  *Id.*  The progress notes reflect that Defendant

/ / /

---

[1] The facts alleged in Plaintiff's TAC are accepted as true for purposes of Defendant's Motion.  *See Vasquez v. Los Angles Cnty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

[2] Plaintiff avers elsewhere in the TAC that his medical record also contained "independent medical documents" dating from 1987 to 1991 that evidenced his diagnosis with Crohn's disease. TAC at 3, 12; ECF No. 66-2 at 47–53.

[3] While the referenced exhibit is undated and does not include the name of the authoring physician, in her Motion, Defendant identifies the exhibit as her progress notes from the June 11, 2019 appointment.  See Mot. at 12.

ordered a colonoscopy and referred Plaintiff to a gastroenterologist in an effort to confirm his diagnosis. *Id.* "If the patient refuses to be evaluated for possible Crohn's disease, I am not comfortable continuing to prescribe mesalamine, as it can have side effects," Defendant explained in the progress notes. *Id.* According to a prescription order form that Plaintiff attached to the TAC, Defendant renewed Plaintiff's mesalamine prescription for a period of 60 days, with the prescription set to expire on August 10, 2019. *Id.* at 4.

On June 17, 2019, Defendant filed a health care grievance against Defendant. *Id.* at 26. Plaintiff complained that Defendant "threaten[ed] to remove and discontinue my medication for my Crohn[']s disease. She also threaten[ed] to not prescribe any other medication to treat my Crohn[']s disease." *Id.* "I do not know the reasons for[ Defendant's] actions and behavior on June 11, 2019," Plaintiff pondered, "but I hope this is not retaliation for me litigating my medical issues." *Id.* at 27. Calipatria officials later converted Plaintiff's health care grievance into a staff complaint (Tracking No. CAL SC 19000009). *Id.* at 30, 31. In the final headquarters-level response to Plaintiff's staff complaint, the Chief of the Health Care Correspondence and Appeals Branch determined that no intervention was required, informing Plaintiff that, "[w]hile [he] may not agree with the decisions of [his] treatment team, it does not constitute staff misconduct or deliberate indifference to your health care needs." *Id.* at 25.

On or about August 11, 2019, "[D]efendant started denying[ ]all medication to treat [P]laintiff['s] [C]rohn['s] disease," according to Plaintiff. TAC at 8. According to records attached to the TAC, Plaintiff filed a second health care grievance (Tracking No. CAL HC 19000166) after his prescription was discontinued. *See* ECF No. 66-2 at 42. In the institutional-level response to Plaintiff's second grievance, Dr. Nasir, the Chief Executive Officer of Calipatria, informed Plaintiff that his prescription had been discontinued due to his failure to consent to an evaluation for Crohn's disease. *Id.* "You refused to sign a consent for a colonoscopy on June 18, 2019, and refused evaluation by a [gastroenterology] specialist on July 9, 2019," Dr. Nasir noted. *Id.* "Since you refused the colonoscopy ordered by [Defendant] your medication may be discontinued any time at the discretion of

[Defendant]," Dr. Nasir explained.  Accordingly, said Dr. Nasir, "[y]our Crohn's Disease medication, mesalamine, was not renewed when it expired on August 10, 2019." *Id.*

Plaintiff, however, alleges that Defendant discontinued his prescription in retaliation for Plaintiff's "past litigation" and the grievance that Plaintiff filed against Defendant. TAC at 9, 17–18.  He characterizes Defendant's conclusion that there was no evidence of his diagnosis with Crohn's disease as a "fraudulent lie," *id.* at 8, that was part of a "nefarius (sic) scheme to cause [P]laintiff harm" through the discontinuance of his medication, *id.* at 3.  Moreover, Defendant's decision to not taper Plaintiff off his medication was "dangerous" and posed a substantial risk to his well-being that Defendant disregarded, in Plaintiff's view.  *Id.*  According to Plaintiff, the withholding of his medication resulted in the "unnecessa[r]y" and "wanton" infliction of pain.  *Id.* at 10.  Without his medication, Plaintiff suffered "flare ups" of his Crohn's disease symptoms and eventually became severely ill on October 15, 2019.  *Id.*  During this episode, Plaintiff claims to have experienced "uncontrollable bowel movements, stomach pains, vomiting[,] and diarrea (sic)."  *Id.*

After Plaintiff's illness, he visited a different physician at Calipatria who "agreed to renew the medication, mesalamine, and also ordered a colonoscopy."  ECF No. 66-2 at 43; TAC at 10.  According to Dr. Nasir's institutional-level response to Plaintiff's health care grievance, Plaintiff again "refused to sign a consent" for a colonoscopy on November 5, 2019.  ECF No. 66-2 at 43.  Dr. Nasir warned Plaintiff that the new physician "may decide to discontinue your medication at any time since there is no diagnostic evidence showing you have Crohn's Disease."  *Id.*  In the final headquarters-level response to Plaintiff's health care grievance, the Chief of the Health Care Correspondence and Appeals Branch noted that Plaintiff had "received primary care provider evaluation and monitoring for [his] history of Crohn's disease," but that there was "no documentation that [Plaintiff had] attempted to access health care services utilizing the approved processes for concerns related to mesalamine."  *Id.* at 82.

/ / /

## PROCEDURAL BACKGROUND

On July 20, 2020, Plaintiff filed a civil rights action pursuant to 42 U.S.C. § 1983, naming as defendants Dr. Currier; Ralph Diaz, "[S]ecretary of [the California Department of Corrections and Rehabilitation ("CDCR")]"; and Nurse Salgado, an employee at Calipatria.  *See generally* ECF No. 1.  On November 6, 2020, the Court granted Plaintiff's Motion to Proceed *in Forma Pauperis* ("IFP") and screened his original complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(b).  *See generally* ECF No. 4.  In its November 6, 2020 Order, the Court found that Plaintiff had failed to state a claim as to Secretary Diaz and Nurse Salgado.  As to Dr. Currier, the Court concluded that Plaintiff failed to state a First Amendment retaliation claim or an Americans with Disabilities Act ("ADA") claim but that Plaintiff did state an Eighth Amendment claim.  The Court granted Plaintiff leave to file a First Amended Complaint curing the pleading deficiencies identified or to file notice of his intent to proceed with respect to his Eighth Amendment claims against Dr. Currier only.  *See id.* at 13–14.  This Order issued before Plaintiff's Amended Complaint, mailed on November 4, 2020, was entered into the Court's docket on November 10, 2020.  *See* ECF No. 12 ("FAC").

In a June 2, 2021 Order, the Court dismissed Defendants Secretary Diaz and Nurse Salgado following screening of the FAC pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(b) and ordered service of the summons as to Dr. Currier, the sole surviving defendant.  *See generally* ECF No. 21.  On June 14, 2021, Plaintiff filed both an Objection to and a Notice of Appeal as to the June 2, 2021 Order.  *See* ECF Nos. 24–25.  On July 16, 2021, Plaintiff's appeal was dismissed for lack of jurisdiction.  *See* ECF No. 31.  Meanwhile, on June 28, 2021, Plaintiff filed his Motion to File Second Amended Complaint ("SAC").  *See generally* ECF No. 29.  Per a July 19, 2021 Order, the Court granted Plaintiff leave to file the SAC and denied as moot his Objection to the June 2, 2021 Order.  *See* ECF No. 32.

On August 4, 2021, Plaintiff filed the SAC.  *See* ECF No. 35.  In a January 27, 2022 Order, the Court screened the SAC, dismissing Plaintiff's ADA claims against Dr. Currier and Nurse Salgado but permitting his Eighth Amendment deliberate indifference and First

Amendment retaliation claims against Dr. Currier to proceed.  *See generally* ECF No. 41. After the Court granted a series of extensions, Dr. Currier, the sole remaining named defendant in this action, finally was served on August 31, 2022.  *See* ECF No. 51.

Meanwhile, on October 28, 2022, Plaintiff filed a Third Amended Complaint.  *See* ECF No. 56.  The Court ordered the purported Third Amended Complaint stricken given that Plaintiff had already amended as of right and any further amendment required the Court's leave.  *See* ECF No. 57.  Plaintiff then filed a Motion for Leave to File Third Amended Complaint.  ECF No. 60.  On December 16, 2022, the Court granted Plaintiff leave to file the TAC, *see* ECF No. 65, which he did on December 23, 2022, *see* ECF No. 66.  The instant Motion to Dismiss followed.  *See* Mot.

Defendant argues that Plaintiff's TAC fails to state claims for deliberate indifference in violation of the Eighth Amendment or retaliation in violation of the First Amendment. *See* Mot. at 7.  Further, Defendant contends that Plaintiff failed to exhaust administrative remedies as to his First Amendment claim.  *Id.*

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A / / /

complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6). A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556). That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557). Further, the Court need not accept as true "legal conclusions" contained in the complaint. *Id.* This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* Finally, "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).

Where a complaint does not survive the Rule 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schriber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). "The Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels v. JBC Legal Grp., P.C.*, 229 F.R.D. 152, 155 (N.D. Cal. 2005) (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990)).

/ / /

# ANALYSIS

## I.   Eighth Amendment Claim—Deliberate Indifference to Serious Medical Need

"Under 42 U.S.C. § 1983, to maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).   "First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.   Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (internal quotation marks and citations omitted).   "Th[e] second prong—defendant's response to the need was deliberately indifferent—is satisfied by (a) a purposeful act or failure to respond to plaintiff's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 (internal citations omitted).

"Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).   An "inadvertent [or negligent] failure to provide adequate medical care" alone does not state a claim under § 1983.   *Id.* at 1096 (citing *Estelle*, 429 U.S. at 105).   An inmate must "make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." *Lemire v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1074 (9th Cir. 2013) (internal citation omitted).   To satisfy this subjective component of deliberate indifference, an inmate must show that prison officials "kn[ew] of and disregard[ed]" a substantial risk of harm.   *Farmer v. Brennan*, 511 U.S. 825, 837, 842 (1994).   Under this standard, the prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person "must also draw the inference." *Toguchi,* 391 F.3d at 1057 (citing *Farmer*, 511 U.S. at 837).

Defendant argues that the TAC fails to state a claim for deliberate indifference because "there are insufficient facts to establish the subjective prong of the deliberate indifference analysis." Mot. at 12.   Specifically, "[u]nder the facts as plead[ed], Defendant

could not be said to have a reasonable basis for believing Plaintiff had Crohn's disease," and, consequently, "Defendant could not have been aware of a substantial risk of serious harm." *Id.* at 13.  Moreover, "[t]he facts alleged also show that Defendant did not disregard any potential risk but rather took steps to appropriately quell what risk there was by making appointments for Plaintiff that could verify his diagnosis." *Id.*  Plaintiff counters that the TAC repeatedly alleges that Defendant knew he suffered from Crohn's disease based on her review of his medical records.  Opp'n at 5–11.  Consequently, Defendant was aware that discontinuing Plaintiff's medication posed a substantial risk of harm but nonetheless disregarded it. *Id.*

Here, the Court finds that Plaintiff has failed to state an Eighth Amendment deliberate indifference claim.  There is no dispute that Crohn's disease constitutes a serious medical need, *see generally* Mot.; therefore, whether Plaintiff states a claim hinges on whether Plaintiff plausibly has alleged that Defendant "kn[ew] of and disregard[ed]" a substantial risk of harm. *Farmer*, 511 U.S. at 837, 842.  The exhibits attached to the TAC tend to undermine, rather than support, Plaintiff's claim that Defendant knew that Plaintiff suffered from Crohn's disease.[4]  Both Defendant and Dr. Nasir concluded that there was no evidence of Plaintiff's diagnosis with Crohn's disease.  *See* ECF No. 66-2 at 2, 43.  Additionally, the CDCR medical records Plaintiff cites as proof of his diagnosis are, in fact, inconclusive.  The first, a CDCR Operation Report describing the results of a colonoscopy performed on Plaintiff on February 20, 2001, found "no evidence of active

---

[4] The Court notes that while it is generally true that, when ruling on a defendant's motion to dismiss, "a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), and "liberally construe pro se pleadings," *Mangaoang v. Special Default Servs., Inc.*, 427 F. Supp. 3d 1195, 1205 (N.D. Cal. 2019), "[t]he court need not . . . accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," *Sprewell*, 266 F.3d at 988.  Here, Plaintiff attached a number of exhibits to the TAC, which the Court may review in ruling on the instant Motion.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment.").  Accordingly, to the extent the TAC's allegations are contradicted by the exhibits Plaintiff attached to the TAC, the Court need not accept such allegations as true.

Crohn's Disease." *Id.* at 45.  The second, an X-Ray Report from CDCR medical officials at Salinas Valley State Prison dated February 21, 2001, noted certain "changes" in Plaintiff that were "*consistent with* an active Kron's (sic) disease," *Id.* at 11 (emphasis added). Finally, a CDCR "Medical Classification Chrono" for Plaintiff dated August 9, 2012, includes a brief doctor's note stating "Chron's (sic) Disease Controlled," but it does not provide any medical history corroborating a formal diagnosis. *Id.* at 6.  Due to the uncertain or conflicting nature of these reports, the Court cannot say that Defendant, upon reviewing these records, would have known and accepted with certainty that Plaintiff suffered from Crohn's disease such that attempts to verify his diagnosis were unjustified.

Plaintiff claims that his prison medical records also contained "independent medical documents" dating to the late 1980s that provided evidence of his diagnosis.  TAC at 12. Plaintiff attached three such documents to the TAC.  *See* ECF No. 66-2 at 47–53.  The Court is not persuaded that Defendant's review of these documents necessarily would have established knowledge of Plaintiff's Crohn's disease, either.  For example, a June 8, 1988 report from James Ryckebosch of the West Covina Medical Clinic, Inc. speculated that Plaintiff exhibited symptoms "most compatible with distal small bowel inflammatory disease, *probably* Crohn's disease."  ECF No. 66-2 at 51 (emphasis added).  Likewise, a September 26, 1989 X-Ray Consultation report from Dr. Stanley W. Hailey opines that Plaintiff's symptoms were "*probably* secondary to some fairly long-standing Crohn's disease of the terminal ileum."  *Id.* at 53 (emphasis added).  Such opinions, which preceded the June 11, 2019, appointment by more than two decades, are too indefinite for the Court to infer that they would have confirmed beyond all doubt Plaintiff's diagnosis to Defendant.

Even if the CDCR medical records or the independent medical records provided facts "from which the inference could be drawn" that Plaintiff had been diagnosed with Crohn's disease and that discontinuing his mesalamine prescription posed a risk of substantial harm to Plaintiff, Defendant's progress notes indicate she did not draw the inference. *Toguchi,* 391 F.3d at 1057 (citing *Farmer*, 511 U.S. at 837).  Accordingly, on

the record before it, the Court finds that Plaintiff fails to allege plausibly that Defendant knew of a substantial risk of harm to Plaintiff. To the extent Plaintiff argues that Defendant *should have* known that he suffered from Crohn's disease based upon her review of his medical records, this argument, too, fails. "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.

Moreover, Plaintiff has failed to show that Defendant disregarded a substantial risk of harm to Plaintiff. On the contrary, Defendant recognized the risk of harm posed by Plaintiff's possible Crohn's disease and made efforts to verify the diagnosis. Following the June 11, 2019 appointment, Defendant ordered a colonoscopy and referred Plaintiff to a gastroenterologist. ECF No. 66-2 at 2, 42–43. She also continued his mesalamine prescription for 60 days, presumably to maintain Plaintiff's prescription until his diagnosis with Crohn's disease could be confirmed by the ordered testing and specialist visit. *Id.* at 4; *id.* at 42–43 (institutional-level response to Plaintiff's health care grievance (Tracking No. CAL HC 19000166) noting Plaintiff's colonoscopy was scheduled for June 18, 2019, and his evaluation by the gastroenterologist was scheduled for July 9, 2019). Because Defendant attempted to verify and treat Plaintiff's alleged Crohn's disease, she "cannot be said to have been 'indifferent' to it," much less deliberately so. *DeGeorge v. Mindoro*, No. 17-CV-06069-LHK, 2019 WL 2123590, at *7 (N.D. Cal. May 15, 2019).

Defendant conditioned the continuation of Plaintiff's prescription for mesalamine on his evaluation for Crohn's disease, noting that mesalamine "can have side effects." *See* ECF No. 66-2 at 2 (documenting Defendant's discomfort with Plaintiff's continued mesalamine prescription "[i]f the patient refuses to be evaluated for possible Crohn's disease"). It was only after Plaintiff refused both the colonoscopy and the consultation with the gastroenterologist that his prescription was discontinued. *Id.* at 42–43. / / /

Accordingly, the TAC and its exhibits evidence that the discontinuation of Plaintiff's medication, and any resulting harm,[5] stemmed not from Defendant's deliberate indifference, but from Defendant's concern that Plaintiff was unnecessarily subjecting himself to risks posed by mesalamine in conjunction with Plaintiff's failure to adhere to Defendant's medical orders.  Plaintiff might not have believed that a colonoscopy and consultation with a gastroenterologist were warranted, but "[a] difference of opinion between a physician and the prisoner . . . concerning what medical care is appropriate does not amount to deliberate indifference."  *Snow v. McDaniel*, 681 F.3d 978, 987 (9th Cir. 2012), *overruled on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014); *see also Medina v. Barenchi*, No. 3:16-CV-2423-AJB-KSC, 2016 WL 7325508, at *5 (S.D. Cal. Dec. 16, 2016) ("[W]hile Plaintiff obviously disagrees with Defendants' assessment of his need for narcotics to treat his pain, his disagreement, without more, does not provide sufficient 'factual content' to plausibly suggest that . . . his treating physician . . . acted with deliberate indifference.").

Based on the foregoing, the Court finds that Plaintiff has failed to state a claim for deliberate indifference in violation of the Eighth Amendment.  Plaintiff's allegation that Defendant knew he suffered from Crohn's disease and lied about it in her progress notes is undermined by Dr. Nasir's conclusion that there was no "diagnostic evidence" of Plaintiff's diagnosis, as well as the inconclusive or contradictory medical records described above.  Further, Defendant's efforts to verify Plaintiff's claimed affliction, and her decision to continue his medication until said affliction could be verified, do not constitute deliberate

---

[5] The Court notes that many of the harms Plaintiff allegedly experienced following the discontinuation of his medication appear to have been unrelated to any alteration in his prescription.  Plaintiff attached to the TAC a joint declaration from three witnesses—Charles Allen, Joseph Jacobs, and Harvey Ventura—who claim that Plaintiff was one of several inmates who became ill on or around October 15, 2019, "from the food at Calipatria State Prison."  ECF No. 66-2 at 38.  According to the declarants, food-related illness was so widespread during this time that prison officials placed Plaintiff's building under medical quarantine.  *Id.*  This declaration contradicts Plaintiff's claim that his illness on October 15, 2019, was spurred by the denial of his prescription for mesalamine, TAC at 10, suggesting instead that his illness was food related.

indifference.  Finally, any harm resulting from the discontinuance of Plaintiff's medication was not caused by indifference.  Consequently, the Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiff's Eighth Amendment deliberate indifference claim.

## II.   First Amendment Claim—Retaliation

"[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974).  "Prisoners' First Amendment rights encompass their right to file prison grievances," *Clinton v. Cooper*, 781 F. App'x 582, 585 (9th Cir. 2019), and to "'pursue civil rights litigation in the courts,'" *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005) (quoting *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)).  "[B]ecause purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id.*; *see Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so.").

To state a viable claim for First Amendment retaliation in the prison context, a plaintiff must allege the following:

> that (1) "the retaliated-against conduct is protected," (2) the "defendant took adverse action against plaintiff," (3) there is a "causal connection between the adverse action and the protected conduct," (4) the act "would chill or silence a person of ordinary firmness," and (5) the conduct does not further a legitimate penological interest.

*Davis v. Powell*, 901 F. Supp. 2d 1196, 1213 (S.D. Cal. 2012) (quoting *Watison*, 668 F.3d at 1114).  "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison*, 668 F.3d at 1114.

/ / /

"The Court evaluates a claim for retaliation in light of the deference that must be accorded to prison officials." *Robinson v. Catlett*, 725 F. Supp. 2d 1203, 1211 (S.D. Cal. 2010); *see also Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995) (noting courts should evaluate prisoner retaliation claims in light of the Supreme Court's "disapproval of excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone'" (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995))).

Defendant argues that Plaintiff's TAC "alleges four different adverse actions" purportedly taken in retaliation for Plaintiff's protected conduct: (1) Defendant falsified her progress notes of the June 11, 2019 appointment by saying there was no proof that Plaintiff had Crohn's disease; (2) Defendant discontinued Plaintiff's medication; (3) Defendant did not taper the medication; and (4) Defendant excluded Plaintiff from all health care services at Calipatria between August 9, 2019, and October 30, 2019. Mot. at 15–16. Defendant contends that Plaintiff alleges no facts establishing that Defendant knew of Plaintiff's prior litigation, so any theory of retaliation resting on this basis is defunct. *Id.* at 17. Further, according to Defendant, "the pleaded facts of the Complaint fail to establish" that Plaintiff's grievance motivated any adverse action. *Id.* Plaintiff's retaliation claim also fails, in Defendant's view, because the TAC contains no facts plausibly showing that Defendant's actions resulted in Plaintiff's inability to acquire his requested healthcare treatment between August 9, 2019, and October 30, 2019. *Id.* at 16. Finally, Defendant's alleged falsification of her progress notes preceded Plaintiff's threat of filing a grievance against her, meaning it cannot be an adverse action to protected conduct. *Id.*

Plaintiff, generally, contends that the facts alleged in the TAC satisfy each of the five elements required to state a First Amendment retaliation claim. Opp'n at 14–18. While Plaintiff identifies three of the same alleged adverse actions—which the Court has listed as adverse actions (2) through (4) above—Plaintiff's description of the first adverse action differs from Defendant's characterization. Plaintiff's Opposition contends that Defendant retaliated against him on the basis of protected conduct when she "referred

fraudulent medical records and health care records . . . to a contracted gastroenterologist specialist on [June 19, 2019][6] for [P]laintiff filing grievance on [June 17, 2019]."  Opp'n at 14.   Similarly, the TAC identifies the first instance of retaliation as "when the [D]efendant referred the fraudulent medical records and Health Care records . . . to a contracted CDCR gastroenterologist specialist on [June 19, 2019]."  TAC at 16–17. Accordingly, Plaintiff contends that the initial adverse action was not Defendant's alleged falsification of her notes, but rather her distribution of those allegedly fraudulent notes to a gastroenterologist.  The Court will address and analyze this as Plaintiff's first alleged adverse action.  Elsewhere, however, Plaintiff also alleges that "[D]efendant took adverse action and retaliated in failing to remove the lie in [P]laintiff[']s medical records" that there was no evidence of Plaintiff's diagnosis with Crohn's disease and that Plaintiff was self-prescribing mesalamine.  TAC at 19.  In other words, Plaintiff contends, as noted by Defendant in her Motion, that the inclusion of this allegedly fraudulent material in the progress notes constitutes retaliation.  The Court, however, will treat this as a fifth instance of alleged adverse action, rather than the first, as Defendant does.

Here, the Court finds that Plaintiff's TAC fails to state a claim for retaliation in violation of the First Amendment.  As an initial matter, the TAC is devoid of facts from which the Court plausibly may infer that Defendant's actions were motivated by Plaintiff's prior litigation against Calipatria.  Contrary to Defendant's argument that Plaintiff alleges no facts establishing that Defendant knew of Plaintiff's prior litigation, the TAC sufficiently pleads that "[D]efendant was aware of [P]laintiff[']s past grievances and writ on [Calipatria] medical Department from the CDCR computer," which "[D]efendant read on June 11, 2019 as the [D]efendant was reviewing [P]laintiff[']s medical and health care records."  *Id.* at 20.  Nevertheless, the TAC fails to allege a plausible causal connection between Plaintiff's past litigation and any subsequent adverse action.

---

[6] Plaintiff's Opposition lists the date in question as "6-19-2011."  *See* Opp'n at 14.  Given the timeline of the events in question, the Court assumes this date contains a typographical error and that the date to which Plaintiff intended to refer is June 19, 2019.

Plaintiff's past litigation occurred more than a decade prior to the June 11, 2019 appointment and involved a habeas petition through which Plaintiff successfully sought single-cell accommodations. ECF No. 66-2 at 71–75. There are no facts in the TAC establishing that Defendant was involved in Plaintiff's habeas proceeding or that the outcome of that proceeding affected her in any manner whatsoever. *See generally* TAC. Tellingly, Plaintiff could only speculate about a causal connection in his health care grievance against Defendant, stating he "d[id] not know the reasons" behind Defendant's actions during the June 11, 2019 appointment and "hope[d]" she was not retaliating against him for past litigation efforts. ECF No. 66-2 at 26–27. Plaintiff's bald claims of a causal connection between his past litigation and Defendant's allegedly fraudulent progress notes are nothing more than legal conclusions devoid of factual support. Accordingly, the Court need not accept them as truth. *Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). Here, the "chronology of events" simply does not permit a plausible inference of retaliation. *See Watison*, 668 F.3d at 1114.

As the Court has concluded that the TAC does not plausibly allege that any adverse actions were taken in retaliation for Plaintiff's past litigation against Calipatria, the only remaining protected conduct alleged by Defendant is his statement of intent to file the grievance during the June 11, 2019 appointment and the actual filing of his grievance against Defendant on June 17, 2019. As noted above, Plaintiff alleges Defendant took five adverse actions against him in retaliation for that protected conduct. The Court will address each of these in turn.

First, Defendant's transfer of Plaintiff's medical records to a gastroenterologist does not constitute an adverse action, and it furthered a legitimate penological interest. The exhibits attached to the TAC demonstrate that Defendant referred Plaintiff to a gastroenterologist to confirm his diagnosis with Crohn's disease and address concerns related to mesalamine's side effects. ECF No. 66-2 at 2, 42–43. Providing appropriate medical care to a prisoner is not an adverse action that would have a chilling effect on a

prisoner's First Amendment rights. *Rhodes*, 408 F.3d at 568–69 ("[T]he proper First Amendment inquiry asks 'whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.'" (emphasis omitted) (quoting *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999))). Moreover, providing medical care to prisoners furthers a legitimate penological interest in the health and safety of prisoners. *See Malik v. Woodley*, 14 F. App'x 779, 780 (9th Cir. 2001) (identifying a "penological interest in the health and safety of other prisoners"). To the extent Plaintiff argues the allegedly fraudulent nature of the progress notes contributed to a chilling effect or negated any legitimate penological interest, the Court rejects this argument. As discussed above, the TAC's exhibits undermine Plaintiff's claims of fraud by demonstrating that another prison official, Dr. Nasir, concluded there was an absence of "diagnostic evidence" as to Plaintiff's alleged Crohn's disease, *see* ECF No. 66-2 at 42–43, and revealing the inconclusive nature of the medical records Plaintiff cites as proof of his diagnosis, *supra* pp. 9–10.

Second, Plaintiff has failed to allege a plausible causal connection between his protected conduct and the discontinuance of his prescription for mesalamine. Defendant conditioned the continuance of Plaintiff's prescription on his evaluation for Crohn's disease due to concerns related to mesalamine's side effects. ECF No. 66-2 at 2. In the institutional-level response to Plaintiff's health care grievance, Dr. Nasir explained that Plaintiff's prescription was discontinued because he refused to consent to a colonoscopy and declined an evaluation by a gastroenterologist. *Id.* at 42–43. This finding was confirmed in the headquarters-level response to Plaintiff's grievance, in which the Chief of the Health Care Correspondence and Appeals Branch noted that there was "no documentation that [Plaintiff had] attempted to access health care services utilizing the approved processes for concerns related to mesalamine." *Id.* at 82. Thus, according to the exhibits attached to the FAC, the discontinuance of Plaintiff's prescription stemmed from Defendant's concern about the side effects of mesalamine and Plaintiff's refusal to be evaluated for Crohn's disease. Consequently, Plaintiff's retaliation claim fails because he

has not "show[n] that his protected conduct was the substantial or motivating factor behind the defendant's conduct." *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (internal quotations omitted); *see also Jackson v. James*, No. CV 20-4186-SVW (KS), 2021 WL 6804228, at *8 (C.D. Cal. Nov. 30, 2021) (finding no First Amendment claim where "the chronology of events illustrate[d] that [defendant] denied [plaintiff's] requests based on his medical opinion"), *report and recommendation adopted*, No. CV 20-04186-SVW (KS), 2022 WL 617649 (C.D. Cal. Mar. 1, 2022); *cf. Williams v. Amay*, No. 117CV01332AWIEPGPC, 2019 WL 6728054, at *7 (E.D. Cal. Mar. 29, 2019) (finding no chilling effect where defendant doctor denied plaintiff's request for medication but offered to revisit the issue if the plaintiff's symptoms changed or he completed the "process" to receive the requested medication); *London v. Williams*, No. 07-15631, 2009 WL 567883, at *1 (9th Cir. Mar. 6, 2009) ("The district court properly determined that [plaintiff's] retaliation claim failed because he did not show that the denial of his request for a drug not medically warranted was an adverse action.").

Third, Plaintiff has not plausibly alleged that Defendant's decision not to taper Plaintiff off mesalamine was causally connected to his protected conduct. Again, the exhibits to the TAC demonstrate that the discontinuance of Plaintiff's mesalamine prescription was the result of his refusal to be evaluated for Crohn's disease, and the Court cannot plausibly infer otherwise. *See* ECF No. 66-2 at 2, 42–43, 82.

Fourth, Plaintiff has failed to sufficiently plead facts to support the inference that Defendant "denied and excluded [P]laintiff from all medical and Health Care Services within [CDCR] and Calipatria State Prison medical." TAC at 18. While Defendant found no evidence of Plaintiff's diagnosis with Crohn's disease and discontinued his prescription for mesalamine, the TAC fails to allege any facts showing that Defendant barred Plaintiff from *all* medical services at Calipatria. *See generally* TAC. Accordingly, Plaintiff has failed to show that Defendant took this alleged adverse action against him, and his claim for retaliation on this ground fails.

/ / /

Finally, Defendant's recordation of her opinion that there was no evidence of Plaintiff's diagnosis with Crohn's disease and that Plaintiff was self-prescribing mesalamine is not an adverse action.  As discussed above, providing medical care, which consists in part of dispensing medical opinions, is not an adverse action. *Supra* pp. 16–17.  Moreover, the mere recordation of a physician's medical opinion would not "chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568–69; *see also O'Brien v. Saha*, No. 21-55326, 2022 WL 16945892, at *2 (9th Cir. Nov. 15, 2022) (finding that defendant doctor's notations in plaintiff's medical records "about his manipulative behavior designed to obtain opioids" did not constitute adverse action); *cf. Dragasits v. Jin Yu*, No. 16-CV-01998-BAS-JLB, 2019 WL 192759, at *9 (S.D. Cal. Jan. 15, 2019) (noting that defendant's continuing denial of plaintiff's request for a lower bunk accommodation "would not have deterred a reasonable person from pursuing an appeal through higher levels of the grievance process or from filing additional appeals"), *report and recommendation adopted*, No. 16-CV-1998-BAS-JLB, 2019 WL 1055973 (S.D. Cal. Mar. 6, 2019).  While a prisoner may disagree with a physician's opinion, the act of rendering the opinion, on its own, does not constitute retaliation in violation of the First Amendment.

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss as to Plaintiff's First Amendment retaliation claim.[7]

## LEAVE TO AMEND

Federal Rule of Civil Procedure 15 states that courts "should freely give leave [to amend] when justice so requires."  Moreover, "[t]he Ninth Circuit has instructed that the policy favoring amendments 'is to be applied with extreme liberality.'" *Abels*, 229 F.R.D. at 155 (quoting *Morongo Band of Mission Indians*, 893 F.2d at 1079).  "But a district court need not grant leave to amend where the amendment: (1) prejudices the opposing party;

---

[7] In light of the foregoing, the Court need not address Defendant's argument that Plaintiff failed to exhaust his First Amendment claim.  *See* Mot. at 7.

(2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). "[W]hen the district court has already afforded a plaintiff an opportunity to amend the complaint, it has 'wide discretion in granting or refusing leave to amend after the first amendment, and only upon gross abuse will [its] rulings be disturbed.'" *Rich v. Shrader*, 823 F.3d 1205, 1209 (9th Cir. 2016) (quoting *Heay v. Phillips*, 201 F.2d 220, 222 (9th Cir. 1952)).

Here, the Court has afforded Plaintiff multiple opportunities to amend the complaint, *see* ECF Nos. 4, 32, 65. The Court has screened Plaintiff's complaints pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(b) on three occasions. *See* ECF Nos. 4, 21, 41. The Court also has considered a Motion for Reconsideration from Plaintiff. *See* ECF No. 21. Despite the opportunities afforded to Plaintiff, he has nevertheless repeatedly failed to state a claim for deliberate indifference in violation of the Eighth Amendment or for retaliation in violation of the First Amendment. "Despite their various iterations throughout the amended pleadings, it does not appear that the underlying facts could be truthfully alleged to show cognizable claims under § 1983." *Easter v. Sprague*, No. CV 15-3141-JVS (AS), 2016 WL 8732429, at *5 (C.D. Cal. Mar. 8, 2016) (dismissing second amended complaint without leave to amend after plaintiff failed to cure pleading defects despite two opportunities to amend), *report and recommendation adopted*, No. CV 15-3141-JVS (AS), 2016 WL 8737232 (C.D. Cal. May 6, 2016). Accordingly, the Court, exercising its "wide discretion," finds that further leave to amend would be futile.

## CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's Motion to Dismiss (ECF No. 69) and **DISMISSES WITH PREJUDICE** Plaintiff's Third Amended Complaint

/ / /

/ / /

/ / /

/ / /

(ECF No. 66).  As this concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated:  July 24, 2023

Hon. Janis L. Sammartino
United States District Judge

20-CV-1389 JLS (LR)